UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JAMES MCCLENDON,

                   Plaintiff,

-against-

COUNTY OF NASSAU, LAWRENCE
MULVEY, Police Commissioner of Nassau
County Police Department, RICHARD SOTO,
Police Sergeant, JAMES TOBIN, Police
Officer, RAYMOND BUTTACAROLI, Police
Officer, JOHN ADERSON, Police Officer,
BRANDON HILLMAN, Police Officer,
LAURA SVENTORAITIS, Police Officer and
KEITH FAIVR, Police Officer, in their official
and individual capacities,

                   Defendants.
--------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-0190 (SJF)(ETB)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    OCT 1 1 2012    ★

**LONG ISLAND OFFICE**

FEUERSTEIN, J.

    On January 7, 2011, incarcerated pro se plaintiff James McClendon ("plaintiff")

commenced this action pursuant to 42 U.S.C. § 1983 against defendants Nassau County (the

"County"), Nassau County Police Department 1st Precinct (the "Precinct"), and unidentified

Nassau County police officers, alleging that the officers violated his civil rights while placing

him under arrest in December 2009. [Docket Entry No. 1]. On May 11, 2011, the Court

dismissed the complaint sua sponte with prejudice as against the Precinct and without prejudice

as against the County with leave to amend. [Docket Entry No. 7]. On July 27, 2011, plaintiff

filed an amended complaint against the County, Lawrence Mulvey, Police Commissioner of

Nassau County, Richard Soto, Police Sergeant, and several named police officers (collectively,

"defendants"). [Docket Entry No. 28]. On August 2, 2011, defendants moved to dismiss the

amended complaint based upon plaintiff's failure to comply with Federal Rule of Civil Procedure 4(m) or, in the alternative, to stay the case pending resolution of a parallel action plaintiff filed in state court. [Docket Entry Nos. 29-31]. By order dated November 2, 2011, the Court denied both motions. [Docket No. 39].

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Docket Entry No. 70]. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

I.    Claims

Plaintiff asserts: a claim pursuant to 42 U.S.C. § 1983 alleging that officers used excessive and unreasonable force in the course of plaintiff's arrest in violation of his rights under the Fourth Amendment;[1] common law assault and battery claims under New York law; a claim pursuant to 42 U.S.C. § 1983 alleging that the officers were deliberately indifferent to his serious medical needs in violation of his rights under the Fourteenth Amendment;[2] and a claim pursuant

---

[1] While plaintiff also alleges violations of his rights under the Fourteenth Amendment, allegations of the use of excessive force during the course of an arrest are analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."); Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) ("[T]he Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody . . . of the arresting officer.").

[2] Plaintiff's complaint also alleges violations of his rights in this regard under the Eighth Amendment, but because his claims relate to his medical treatment in the course of his pretrial arrest and detainment, plaintiff may only assert a claim under the Fourteenth Amendment. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) ("The Due Process Clause . . . require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police."); Herbert v. NYC Dep't of Corrections, No. 10-CV-8799, 2012 WL 3834660, at *2 (S.D.N.Y. Aug. 21, 2012) ("A pre-trial detainee . . . receives protection against mistreatment . . . under the Due Process Clause of the Fourteenth Amendment."). However, the analysis under the Fourteenth Amendment is identical to that applied to post-trial detainees under the Eighth Amendment. Id. ("State pre-trial

to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), against the County based upon its alleged endorsement of racially discriminatory policies and its alleged deliberate indifference to violations of plaintiff's constitutional rights.[3]

## II.    Summary Judgment Standard

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted). "A fact is material when it might affect the outcome of the suit under governing law." <u>Id.</u> An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. <u>See Koch v. Town of Brattleboro, Vt.</u>, 287 F.3d 162, 165 (2d Cir. 2002) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would

---

detainees' § 1983 claims for deliberate indifference to serious medical conditions are analyzed . . . under the same standard used to address similar Eighth Amendment claims brought under the statute.").

[3]Plaintiff's complaint fails to specify a basis for naming Lawrence Mulvey, Police Commissioner of Nassau County Police Department, as a defendant in this action.

entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried." Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted).  The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the [nonmoving] party's pleading." Id. (internal quotation marks and citations omitted).

III.     Factual Background

    A.     56.1 Statement

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a).  In response to a motion for summary judgment, non-movants must respond to each purportedly undisputed fact and cite to supporting admissible evidence in the record.  Local Rule 56.1(b), (d); Fed. R. Civ. P. 56(c). The movant's asserted facts are deemed to be admitted unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.  Local Rule. 56.1(c).  Pro se litigants are "not excused from meeting the requirements of Local Rule 56.1." Wali v. One Source Co., 678 F. Supp.2d 170, 178 (S.D.N.Y. 2009).

Plaintiff has failed to submit a proper response to defendants' Rule 56.1 Statement. Plaintiff's response, while sworn, contains no factual allegations supported by admissible evidence in the record to refute defendants' version of purportedly undisputed facts. Nonetheless, the Court retains discretion "to consider the substance of the plaintiff's arguments,"

even when the plaintiff fails to comply with Local Rule 56.1. <u>Wali</u>, 679 F. Supp.2d at 178; <u>see also</u> <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."); <u>Hayes v. County of Sullivan</u>, Nos. 07-CV-7667, 09-CV-2071, 2012 WL 1129373, at *1 n.1 (S.D.N.Y. March 30, 2012) ("In light of Plaintiff's pro se status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record."). Therefore, the Court will consider the sworn statements made by plaintiff in his deposition.

    B.    Plaintiff's Arrest

On December 5, 2009 between 10:00 p.m. and 10:50 p.m., plaintiff walked from his home to a nearby "deli" where he remained for approximately thirty (30) minutes, during which time he played pool and drank two (2) beers. County Defendants' Statement of Material Facts Pursuant to Rule 56.1 [Docket Entry No. 70-1] ("Def. 56.1 St.") at ¶¶ 15, 18; Defendants' Motion for Summary Judgment ("Mot.") Ex. F, Deposition of James McClendon dated March 22, 2012 [Docket Entry No. 70-12] ("Pl. Dep.") at 18:24-19:10. Plaintiff then exited the deli and stood near the front door to smoke a cigarette. Def. 56.1 St. at ¶ 19. Plaintiff was wearing dark pants and a blue hooded sweatshirt. <u>Id.</u> at ¶ 16.

At approximately 11:16 p.m., an anonymous complainant called 911 to report that she saw a tall black male wearing a blue sweater display a gun to people in the deli. <u>Id.</u> at ¶ 23; Mot. Ex. F, Nassau County Police Dep't I/Dispatcher Event Information [Docket Entry No. 70-9]. Police Officer Laura Sventoraitis responded to the call and saw plaintiff standing in front of the deli. Def. 56.1 St. at ¶¶ 22-24.

5

The details of the interaction between plaintiff and Officer Sventoraitis are disputed. Defendants claim that "[i]nitially, Officer Sventoraitis peacefully and from an appropriate distance from Plaintiff began asking him questions." Id. at ¶ 27.  Plaintiff did not answer the questions and instead attempted to walk away. Id. at ¶ 28.  Plaintiff refused to respond to Officer Sventoraitis's commands. Id. at ¶ 29.  During this exchange, Officer Sventoraitis noticed a large bulge in plaintiff's right-front pant pocket. Id. at ¶ 30.  Plaintiff ignored Officer Sventoraitis's instructions to stand still and show his hands and instead tried to walk away. Id. at ¶ 32. Another police officer then "came from behind and blocked Plaintiff from leaving." Id. at ¶ 33. Plaintiff then prevented the officers from conducting a pat down, and Officer Sventoraitis arrested plaintiff with the assistance of other officers at the scene. Id. at ¶¶ 34-35.  "During the arrest, Plaintiff displayed resistance to arrest, which threatened the Officer's safety and required for more Officers to assist with his arrest." Id. at 36.  During a search of plaintiff incident to the arrest, officers discovered a loaded handgun and several bullets. Id. at ¶¶ 37-38.

Plaintiff's account of his interaction with the arresting officers is drawn from his deposition testimony:

> I went outside to smoke a cigarette . . . and, then, the next thing you know, you see an officer walking up and she looked around.  She walked off.  I finished smoking and was getting ready to go back in the store, the officer walks back.  She grabs me by the arm, two more officers pull up in the car to get out the car, the officer the middle officer grabs me and, then, the officer grabs me and throws me to the floor.

Pl. Dep. at 19:18-20:05.  Plaintiff insists in his testimony that he and the officers did not exchange words at any time during the incident. Id. at 20:10-20:21 ("Q:  So, this entire interaction occurred and no words were said by anybody?  A:  No words.").

According to plaintiff, after being taken to the ground, "[he] got pulverized by the

6

police." Id. at 20:22-20:25.  Plaintiff testified that "more officers started coming and they started pounding on [him], . . . they kept pounding on [him] and [he] got kicked in the face and [he] got kicked, again, and . . . [he] lost consciousness after that." Id. at 21:18-21:23.  According to plaintiff, the beating continued after he was handcuffed, he was unconscious for five (5) to fifteen (15) minutes, and following his arrest his face was swollen and his head was hurting, but the officers ignored his requests for medical attention. Id. at 21:06-21:15, 24:19-25:19.[4]

After being placed in custody, plaintiff signed an acknowledgment of understanding and waiver of his Miranda rights and gave a statement. Id. at ¶¶ 40-42.  Plaintiff's statement reads, in relevant part, "[w]hen I went outside a police car pulled up.  The cop started asking me questions and then they told me to get on the ground.  The cops then found the gun and bullets in my pocket." Mot. Ex. P, Statement of James McClendon [Docket Entry No. 70-19].[5]

At 6:27 a.m. the following morning, plaintiff signed a physical condition questionnaire indicating that he was in good health and did not need a doctor, but that the "cops stepped on [his] head," and his "right ear hurt[]."  Mot. Ex. R, Nassau County Police Dep't Physical Condition Questionnaire [Docket Entry No. 70-21].  At 9:11 a.m. on the same day, plaintiff signed a second physical condition questionnaire indicating that that he was in good health and

---

[4]The surveillance footage submitted to the Court depicting a portion of plaintiff's encounter with Officer Sventoraitis is not helpful in determining the issue, as plaintiff is pulled out of view of the surveillance camera immediately after Officer Sventoraitis apparently spots the bulge in plaintiff's pocket.  The only thing that is clear is that the surveillance footage does not directly contradict plaintiff's allegation of excessive force. Cf. Cameron v. City of N.Y., 598 F.3d 50, 60 (2d Cir. 2010) ("When a movant presents '[i]ncontrovertible evidence . . . such as a relevant videotape whose accuracy is unchallenged,' we will grant the movant's motion for [summary] judgment . . . if that evidence 'so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.'") (quoting Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)).
[5]According to defendants, plaintiff admitted in his statement "to having been repeatedly asked questions from the Officer and having been asked to get on the ground, and failing to do so." Def. 56.1 St. at ¶ 42.  The statement contains no such admission.

did not need a doctor, but that his right hand and right ear were injured during the arrest.  Mot. Ex. S, Nassau County Police Dep't Physical Condition Questionnaire [Docket Entry No. 70-22]. Plaintiff was taken to the hospital at approximately 12:05 p.m. on December 6, 2009.  Pl. Dep. at 29:07-29:18.  The "Discharge Diagnosis" states:  "Head Injury, Closed, No Loss of Consciousness[;] Contusion, Face[;] Pain, Neck."  Medication was not prescribed by the doctors at the hospital.  Pl. Dep. at 31:21-32:03.

C.      Plaintiff's Criminal Proceedings

During his criminal proceedings, plaintiff moved to suppress the gun and ammunition and certain inculpatory statements.  People v. McClendon, 939 N.Y.S.2d 530, 531 (App. Div. 2012). Plaintiff's motion was denied following a hearing at which the court viewed surveillance footage of the incident.  Id.  Plaintiff entered a plea of guilty to criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a weapon in the fourth degree.  Plea Minutes, New York v. James McClendon, Ind. No. 1349N-10 (N.Y. Sup. Ct. Feb. 7, 2011) at 6:16-7:03.  The court permitted plaintiff to plead guilty to the charge of obstructing governmental administration without explicitly admitting his guilt pursuant to People v. Serrano, 15 N.Y.2d 304, 310 (1965), in order to allow plaintiff to avoid admitting the veracity of the facts underlying the charge, which were believed to be relevant to plaintiff's appeal of the suppression ruling.  Id.[6]

The Appellate Division affirmed the lower court's denial of the suppression motion, holding that, despite the hearing court's finding that "the security video established that certain

_____

[6]"You're going to plead guilty to counts one, two and three.  Based on an agreement that I have reached with your attorney, you will enter what's known as a Serrano plea with respect to count four. . . . Which means that, the attorney—your attorney is concerned about possibly an admission to the fourth count somehow jeopardizing the right to appeal the hearing you had conducted.  The Serrano plea has you not admitting to any of those facts, as it relates to count four."  Plea Minutes, at 6:16-7:03.

noncrucial aspects of [the arresting officer's] testimony may have been inaccurate," the surveillance footage "supported the officer's testimony on the crucial point that the defendant was not subjected to a forcible stop until the officer saw what appeared to be the outline of a gun in the defendant's pocket." McClendon, 939 N.Y.S.2d at 531. Accordingly, the Appellate Division affirmed the hearing court's finding that the search of plaintiff was lawful and upheld the denial of the suppression motion. Id.

III.     Discussion

A.     Municipal Liability

A municipality may be held liable under 42 U.S.C. § 1983 if a governmental custom, policy, or usage of the municipality causes a deprivation of the plaintiff's rights under federal law. Monell, 436 U.S. at 690-91. "[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012); see also Lee v. City of N.Y., No. 00-CV-3181, 2002 WL 1732810, at *9 (E.D.N.Y. July 22, 2002) ("A municipality cannot be liable under § 1983 on a theory of respondeat superior for the isolated unconstitutional acts of its employees."). Such acts may support municipal liability only where "they were done pursuant to municipal policy, or were sufficiently widespread and persistent to a support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." Jones, 691 F.3d at 81.

Beyond his conclusory allegations, plaintiff has offered no evidence to support a finding that a governmental custom, policy or usage caused the alleged constitutional violations at issue.

9

Accordingly, the County is granted summary judgment on all claims against it, which are dismissed with prejudice.

B.   Lawrence Mulvey

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991); see also Dunn v. Carrier, 137 F. App'x 387, 389 (2d Cir. 2005) ("Where damages are sought in a section 1983 action, the defendant must be responsible for the alleged constitutional violation: The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required.") (internal quotation marks omitted). Aside from showing a defendant's direct participation in the offending conduct, a plaintiff may demonstrate the personal involvement of a supervisory defendant by showing that the supervisor (1) failed to remedy the wrong after learning of the violation; (3) created or allowed the continuation of a policy or custom pursuant to which the unconstitutional practices occurred; (4) exhibited gross negligence in supervising subordinates who caused the constitutional violation; or (5) demonstrated gross negligence or deliberate indifference by failing to act to remedy unconstitutional practices. Wright v. Smith, 21 F.3d 496, 502 (2d Cir. 1994).

Plaintiff has offered no evidence to support a finding of liability on any of the above theories. Since no liability may attach to defendants on the basis of their purported supervisory responsibilities alone, which appears to be the only basis for the inclusion of defendant Lawrence Mulvey in this action, Lawrence Mulvey is granted summary judgment, and plaintiff's claims against him are dismissed with prejudice.

C.   Deliberate Indifference

To establish a claim under the Eighth or Fourteenth Amendment for denial of medical

10

care, plaintiff must show that defendants were deliberately indifferent to his serious medical needs. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). A two-pronged test requires (1) that plaintiff's physical condition be sufficiently serious, and (2) that the failure to render care result from a sufficiently culpable state of mind. Id. at 66. Plaintiff's claim does not satisfy either prong of this test.

Bruises and lacerations alone are generally insufficient to support a claim of constitutional deprivation. See, e.g., Dawes v. Coughlin, 159 F.3d 1346 (2d Cir. 1998) (summary order holding that a reasonable finder of fact could not conclude that a one-and-a-half (1 ½) inch laceration was sufficiently serious to give rise to an Eighth Amendment claim); Dallio v. Hebert, 678 F. Supp.2d 35, 60 (N.D.N.Y. 2009) (holding that two (2) black eyes, bruising in the kidney area, kick marks, open lacerations, headache and numbness did not constitute serious medical need as a matter of law); Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp.2d 303, 311 (S.D.N.Y. 2001) (holding that a bleeding finger, even where skin was "ripped off," did not constitute serious medical need). Rather, the standard for Eighth Amendment violations contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).

Plaintiff alleges in his complaint that he suffered "facial and scalp contusions." Am. Compl. at ¶ 9. Plaintiff testified in his deposition that the facial and scalp contusions were not bleeding at the time of his arrest. Pl. Dep. at 45:14-45:23. Later in his deposition testimony, plaintiff states that "[the officers] caused head seizures and contusions." Id. at 61:14-61:16. Although plaintiff testified that he now suffers from migraines, back pain, and blurry vision as a result of the injuries inflicted upon him during his arrest, id. at 61:15-61:17, and that his subsequent requests to return to the hospital while incarcerated at the County Jail have been

11

denied, id. at 32:06-32:14, any inattention to those alleged chronic conditions during plaintiff's incarceration are irrelevant to the determination of whether the officers who arrested plaintiff and initially took him into custody displayed deliberate indifference to a serious medical need. The injuries plaintiff exhibited in the immediate aftermath of his arrest, i.e., non-bleeding lacerations and contusions, are not sufficiently serious to support a claim of constitutional deprivation. Although chronic or infected wounds may support an Eighth Amendment claim, see Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) ("[I]f prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment."), plaintiff does not allege such an injury here.

Plaintiff's claim also fails as a matter of law due to his inability to offer evidence to support a finding that defendants possessed a culpable state of mind in delaying medical treatment. A defendant demonstrates deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Courts have equated the requisite state of mind to "criminal recklessness." Collazo v. Pagano, 656 F.3d 131, 135 (2d Cir. 2011).

The relatively minor nature of plaintiff's injuries does not support an inference that defendants were able to conclude from plaintiff's physical appearance alone that he was in serious need of medical attention. Further, while plaintiff testified in his deposition that he requested medical attention after he was arrested, Pl. Dep. at 28:17-29:09, he signed two statements to the contrary. [Docket Entry Nos. 70-21, 70-22]. Thus, plaintiff has failed to allege

12

any basis for defendants to have inferred that a substantial risk of serious harm existed. Given the minor nature of plaintiff's injuries and his own statements, defendants cannot be reasonably found to have possessed information regarding plaintiff's medical condition sufficient to render any delay in providing treatment evidence of a culpable state of mind.

Accordingly, defendants are granted summary judgment on plaintiff's Fourteenth Amendment claims related to his medical treatment following his arrest, which are dismissed with prejudice.

D.      Excessive Force[7]

In order to establish that the degree of force used to effectuate his arrest constituted a constitutional violation, plaintiff must show that the actions of the arresting officers were "'objectively unreasonable in light of the facts and circumstances confronting [them], without regard to [their] underlying intent or motivation.'" Nimely v. City of N.Y., 414 F.3d 381, 390 (2d Cir. 2005) (quoting Maxwell v. City of N.Y., 380 F.3d 106, 108 (2d Cir. 2004)). The Court must pay "careful attention to the facts and circumstances . . . , including the severity of the crime at issue, whether . . . [plaintiff] pose[d] an immediate threat to the safety of the officers or others, and whether he . . . actively resist[ed] arrest or attempt[ed] to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

Defendants argue that plaintiff's excessive force claim is barred by the doctrine of

---

[7]To the extent that plaintiff is also asserting a claim for false arrest or "unlawful seizure," such a claim is barred by the doctrine of collateral estoppel. Hayes v. County of Sullivan, 853 F. Supp.2d 400, 426 (S.D.N.Y. 2012) ("'Settled authority establishes that where, as here, a state court has determined that the . . . warrantless [search or] seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action.'") (quoting DeFranco v. Town of Irondequoit, No. 06-CV-6442, 2009 WL 2957813, at *4 (W.D.N.Y. Sept. 11, 2009) (holding that plaintiffs who pled guilty after their motion to suppress evidence was denied were barred by collateral estoppel from re-litigating their Fourth Amendment claims under § 1983)).

collateral estoppel as a consequence of plaintiff's plea to the charge of obstructing governmental administration.[8]  According to defendants, the plea conclusively determined that plaintiff "was acting combative [sic], while armed with a fully loaded .357 magnum, . . . [and] was also refusing to comply with Officer Sventoraitis's commands and that he attempted to 'evade arrest.'"  Memorandum of Law in Support of County Defendants Motion for Summary Judgment [Docket Entry No. 70-23] ("Def. Memo.") at 8-9 (citing Def. 56.1 Stmt. at ¶ 49).  Because "the threat of danger to the officer and society" and "whether the suspect is resisting or attempting to evade arrest" are two factors to be considered in determining the reasonableness of the officers' use of force, defendants argue that the plea determined these facts and thus necessarily resolved the excessive force issue, precluding its relitigation.  Def. Memo. at 8-9 (citing Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999).[9]

Defendants are correct that "under appropriate circumstances, an issue decided in a criminal proceeding may be given preclusive effect in a subsequent civil action and such preclusive effect is possible regardless of whether the underlying criminal proceeding was resolved by a jury trial."  Searles v. Dalton, 751 N.Y.S.2d 84, 84-85 (App. Div. 2002) (internal quotation marks and citations omitted).  "[A] guilty plea conclusively establishes the factual predicate for the offense to which the defendant is pleading guilty. . . . Whether that same guilty plea forecloses a future cause of action or legal proceeding, however, is to be determined on the basis of other principles, specifically, of collateral estoppel and the full faith and credit statute."

---

[8]"A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ."  N.Y. PENAL LAW § 195.05 (McKinney 2012).

[9]Given the disposition of this issue, the Court need not address whether plaintiff's entry into a Serrano plea changes the preclusive effect of the plea.

14

United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006) (internal quotation marks omitted).

Under New York law, there are two (2) requirements for the application of collateral estoppel:

(1) "'the identical issue was necessarily decided in the prior action and is decisive in the present

action'"; and (2) "'the party to be precluded from relitigating an issue must have had a full and

fair opportunity to contest the prior determination.'" Gregg, 463 F.3d at 165 n.1 (quoting

D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 564 N.E.2d 634, 636 (N.Y. 1990)).  The party seeking

preclusion bears the burden of showing that the issue to be precluded was necessarily decided in

the prior action.  Merchants Mut. Ins. Co. v. Arzillo, 472 N.Y.S.2d 97, 103 (App. Div. 1984).

 Plaintiff's guilty plea to obstructing governmental administration does not preclude his

excessive force claim.  Although "some degree of physical force is incident, and even necessary,

to making an arrest, especially in situations where the suspect has previously refused to comply

with the officers' orders," Davis v. Callaway, No. 3:05CV00127, 2007 WL 1079988, at *5 (D.

Conn. Apr. 9, 2007), "an officer is not entitled to use an unlimited amount of force, even where

the arrestee resists or assaults the officer," McMillan v. City of N.Y., No. 10 Civ. 2296, 2011 WL

6129627, at *5 (S.D.N.Y. Dec. 9, 2011) (internal quotation marks omitted).  Even where the

arrestee resists, "[t]he force used by the officer must be reasonably related to the nature of the

resistance and the force used, threatened, or reasonably perceived to be threatened, against the

officer."  Sullilvan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000).  Therefore, plaintiff's

conviction of obstructing governmental administration, even if it establishes the factual predicate

of the charge, i.e., that plaintiff interfered in some way with defendants' investigation, is not

dispositive of whether defendants used excessive force in response to plaintiff's resistance or

interference.  Id. at 165 ("As our brethren in other Circuits have squarely held, the jury's return of

a guilty verdict in state court for resisting arrest, and/or other offenses such as assault on a police

officer does not necessarily preclude a subsequent claim of excessive force in federal court.");

see also, e.g., Griffin v. Crippen, 193 F.3d 89, 92 (2d Cir. 1999) (plaintiff's guilty plea to assault

did not preclude excessive force claim against guards stemming from same incident because

conviction was not inconsistent with the use of excessive force in subduing the plaintiff); Getlin

v. Zoll, 707 F. Supp.2d 369, 376 (E.D.N.Y. 2010) (holding that plaintiff's excessive force claim

was not precluded by his prior conviction for reckless endangerment because neither the

conviction nor the plea allocution addressed the details of plaintiff's behavior and the

reasonableness of the officers' response); Sanabria v. Martins, 568 F. Supp.2d 220, 226 (D.

Conn. 2008) (holding that plaintiff's guilty plea to offense of interfering with a police

investigation did not preclude him from claiming that excessive force was used in response to

plaintiff's interference); McCrory v. Belden, No. 01 Civ. 0525, 2003 WL 22271192, at *5

(S.D.N.Y. Sept. 30, 2003) (holding that inmate's conviction for attempted assault did not

preclude inmate from claiming that excessive force was used either before or after the attempted

assault).

       Given that plaintiff's claim is not precluded by the doctrine of collateral estoppel, the

Court must assess the sufficiency of the evidence plaintiff has presented.  As stated above, an

application of force is excessive if it is "objectively unreasonable 'in light of the facts and

circumstances confronting [the officers], without regard to [their] underlying intent or

motivation.'" Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham, 490 U.S. at

397).  While "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates the Fourth Amendment," Graham, 490 U.S. at 396, relatively minor

injuries are often held to be sufficient to sustain an excessive force claim past summary

judgment. See, e.g., Maxwell v. City of N.Y., 380 F.3d 106, 109-10 (2d Cir. 2004) (reversing

16

summary judgment for defendants where plaintiff testified that head-first shove into police car caused a scrape, pain in her arm and lower back, and post-concussive syndrome); Robinson v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987) (holding that plaintiff's testimony that officer pushed her against inside of the door of her car, yanked her out, threw her up against the fender, and twisted her arm behind her back causing "bruises lasting a 'couple weeks'" was sufficient to prevent summary judgment on excessive force claim). Therefore, the contusions and lacerations suffered by plaintiff could sustain a claim of excessive force.

Plaintiff's testimony that he was kicked and "pulverized" after being placed in handcuffs also raises a triable issue of fact. Unnecessary blows inflicted while an arrestee is in handcuffs may be sufficient to sustain an excessive force claim. See, e.g., Lemmo v. McKoy, No. 08-CV4264, 2011 WL 843974, at *6 (E.D.N.Y. Mar. 8, 2011) ("[G]ratuitous uses of force that are not required to subdue an individual likely fail the . . . objective reasonableness test."); Castellar v. Caporale, No. CV-04-3402, 2010 WL 3522814, at *8 (E.D.N.Y. Sept. 2, 2010) (denying summary judgment for defendants where plaintiff testified that officer shoved him against the wall when plaintiff was already handcuffed, despite absence of any serious injuries); Hamilton v. City of N.Y., Nos. 07-CV- 3633, 07-CV-3825, 2009 WL 2226105, at *9 (E.D.N.Y. July 23, 2009) (holding that it was objectively unreasonable for an officer to trip plaintiff after he was already handcuffed and cooperating); Davis v. City of N.Y., No. 04-CV-3299, 2007 WL 755190, at *12 (E.D.N.Y. Feb. 15, 2007) (denying defendants' motion for summary judgment due to plaintiff's testimony that she was kicked in the shoulder for no reason while handcuffed on the floor, holding that such a "gratuitous" use of force does not constitute an objectively reasonable use of force as a matter of law); Pierre-Antoine v. City of N.Y., No. 04 CV-6987, 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (denying defendant's motion for summary judgment on

17

excessive force claim and noting plaintiff's testimony that the assault continued after he was handcuffed, "when a claim of necessary force would be much harder to maintain").

Although plaintiff relies almost exclusively on his own testimony in support of his excessive force claim, defendants have failed to offer any evidence that conclusively refutes that testimony. At this stage, therefore, there is no evidence before the Court from which it can conclude that a fact-finder could not reasonably credit plaintiff's testimony and find the force used against him to be unreasonable. See Sachs v. Cantwell, No. 10 Civ. 1663, 2012 WL 3822220, at *15 (S.D.N.Y. Sept. 14, 2012) ("Ultimately there is a dearth of evidence in the record that would conclusively establish exactly how much force was used and whether that force was objectively reasonable."); see also Lemmo, 2011 WL 843974, at *7 ("[T]he record contains only a general denial by the officers with respect to this episode rather than an actual conflicting account. The jury can and should decide what actually occurred and what, if any, compensation is due plaintiff."). Whether plaintiff is entitled to recover depends on a determination of a number of issues, including plaintiff's behavior toward the officers, the degree of force used to subdue him, the severity of his injuries, and the credibility of the parties. These determinations cannot be made as a matter of law based upon the record here. See Sachs, 2012 WL 3822220, at *15 ("'[A]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'") (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 553-54 (2d Cir. 2005)). Accordingly, summary judgment on plaintiff's excessive force claim is denied.

E.    State Law Claims

Plaintiff's state law claims must be dismissed based upon plaintiff's failure to adequately plead compliance with the notice of claim requirements under New York law. See N.Y. Gen.

Mun. Law § 50-e (McKinneys 2012). "Under New York law, a notice of claim is a condition precedent to bringing certain tort actions against a municipality . . . for damages sustained by reason of the negligence or wrongful act of the municipality or its officers, agents or employees." Ferlito v. County of Suffolk, No. 06-5708, 2007 WL 4180670, at *3 (E.D.N.Y. Nov. 19, 2007). "The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action." Warner v. Village of Goshen Police Dept., 256 F. Supp.2d 171, 175 (S.D.N.Y. 2003). "[A] plaintiff asserting state tort law claims against a municipal entity or its employees must plead in the complaint that: (1) the Notice of Claim was timely served within ninety days after such claim arose; (2) at least thirty days have elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) the defendant failed to satisfy the claim in that time." Matthews v. City of N.Y., No. 10-CV-4991, 2012 WL 3839505, at *23 (E.D.N.Y. Sept. 5, 2012). Plaintiff has failed to plead compliance with these requirements and, therefore, his claims must be dismissed. Because no evidence has been presented regarding the status of plaintiff's parallel state action and the Court cannot conclude that any application for relief from the notice of claim requirements in state court would be unsuccessful, plaintiff's state law claims are dismissed without prejudice to allow plaintiff to pursue relief in state court if appropriate.

III.    Conclusion

        For the foregoing reasons, defendants motion for summary judgment [Docket Entry No. 62] is granted in part and denied in part. The Clerk of Court shall, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this order upon all parties in accordance with Rule 5(b) of the Federal Rules of Civil Procedure and mail a copy of this order to plaintiff's address of record pursuant to Rule 5(b)(2)(C).

SO ORDERED.

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated:          October 11, 2012
                Central Islip, New York

20